IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARLENE D. ASKEY, Executrix of the )
Estate of Edward R. Askey, deceased, )
      Plaintiff, )
) Civil Action No. 2:16-cv-00480
v. )
) Judge Mark R. Hornak
HAGERTY INSURANCE AGENCY, LLC, )
et al. )
      Defendants. )

## OPINION

**Mark R. Hornak, United States District Judge**

This is an insurance case where the operative facts are essentially undisputed. The question is whether, given those facts, a common type of insurance policy provision known as a "household exclusion" is enforceable under Pennsylvania law in this case.[1] Because it is, Hagerty Insurance Agency's Motion to Dismiss (ECF No. 6) will be granted.

### I.    BACKGROUND[2]

Marlene Askey ("Plaintiff") survives her late husband, Edward Askey, who passed in an automobile accident on January 24, 2014 in Westmoreland County, Pennsylvania. ECF No. 1-4 at 3. The tortfeasor in the accident, Carrie Corrao, carried automobile liability insurance from Safe Auto Insurance Company in the amount of $15,000. *Id.* at 4. Mr. Askey had three automobile insurance policies: two issued by Nationwide and one issued by Hagerty/Essentia ("Defendants"). *Id.* at 4-5.

---

[1] The Court's subject-matter jurisdiction is based on diversity of citizenship of the parties. The substantive law of the forum state applies. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). The parties do not dispute that Pennsylvania law governs, and the Court agrees.

[2] The Court accepts as true Plaintiff's allegations in her Complaint, ECF No. 1-4, and all reasonable inferences that can be drawn from them.

Following her husband's death, the Plaintiff successfully claimed $15,000 for Corrao's liability under Corrao's policy with Safe Auto and $300,000 in underinsured motorist benefits under her husband's policies with Nationwide. *Id.* at 4-5. All of those funds have been paid out. *Id.* Plaintiff then made a claim under her husband's policy with Defendants ("Policy") but that claim was denied. *Id.* at 5. Plaintiff filed the instant Complaint seeking a declaratory judgment in her favor under the Policy. *Id.* at 7.

Both sides agree that the Policy was a limited-use classic car policy which provided coverage for just one of Mr. Askey's cars: a 1975 Oldsmobile 98 Regency. At the time of the accident, however, Mr. Askey was not driving his '75 Olds—he was driving his regular-use vehicle. The Plaintiff further acknowledges that the explicit language of the Policy, if enforced, would operate to bar the Plaintiff from recovering. The Policy contains what is commonly known as a "household exclusion," which states:

> A. We do not provide Underinsured Motorist Coverage for bodily injury sustained:
> 1. By an insured while occupying . . . any motor vehicle owned by that insured which is not insured for this coverage under the policy.

ECF No. 1-4 at 5.

## II. <u>LEGAL STANDARD</u>

Under the familiar plausibility standard governing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. ANALYSIS

The interpretation of an insurance contract is a matter of law for the court to decide. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 586 (1994). The object is to ascertain the intent of the parties. *Id.* The plain language of the insurance contract is the touchstone; when that language is clear and unambiguous, it must be given full effect. *Id.* An exception to this general rule exists where the contract's plain language is contrary to public policy. *Id.* at 586-87. For the public policy exception to invalidate a contractual provision, that provision must be "so obviously . . . against the public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Id.* at 587.

The question of whether or not a household exclusion in an insurance policy is unenforceable as contrary to public policy is a determination to be made on a case-by-case basis. *Id.* at 595. Courts should consider the unique factual circumstances presented. *Id.* Here, because the parties agree that the language of the household exclusion in the Policy would, if enforced, bar the Plaintiff's recovery, the only question is whether the household exclusion in the Policy is so obviously contrary to public policy given the facts of this case that the Court should not enforce it.

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Stat. 1701, *et seq.*, mandates that insurance companies make available uninsured and underinsured motorist coverage as part of every motor vehicle liability insurance policy issued in the Commonwealth. *Id.* at 587-88. Initially, the MVFRL required that drivers carry uninsured and underinsured motorist coverages on their policies. *Id.* at 588. The MVFRL was later amended, however, and now insurers are required to provide such coverage but drivers are not required to accept it and then pay for it. *Id.* at 588, n.1.

3

Applying Pennsylvania's decisional law and the MVFRL, the Third Circuit has concluded that household exclusions are generally enforceable despite public policy arguments to the contrary. In *Nationwide Mutual Ins. Co. v. Riley*, for example, a Nationwide insurance agent issued the plaintiff's father an auto insurance policy providing underinsured benefits for his car. 352 F.3d 804, 805 (3d Cir. 2003). Later that year, the same agent issued plaintiff an auto policy that provided underinsured benefits for the plaintiff's car. *Id.* When the plaintiff was involved in an accident with an underinsured motorist while driving her car, she made claims for underinsured motorist coverage under both policies. *Id.* at 806. The plaintiff's claim was successful under her policy, which covered her car, but the plaintiff was denied benefits under her father's policy, which—like the Policy in this case—explicitly excluded coverage for cars "not insured for Underinsured Motorist coverage under this policy." *Id.* After examining the language of the exclusion and applicable public policy considerations under Pennsylvania's MVFRL, the Third Circuit concluded that the household exclusion in the father's policy was enforceable despite the plaintiff's public policy arguments. *Id.* at 810-11. The critical facts in the Court's determination were that (1) neither the plaintiff nor her father had paid Nationwide for underinsured motorist coverage under her father's policy, and (2) the plaintiff already received the underinsured motorist coverage for which she paid under her own policy. *Id.* at 809-11. That the same insurer issued all of the plaintiff's policies, and thus knew of the plaintiff's car, was not determinative.[3] *Id.* at 810.

Examining cases in similar scenarios, Pennsylvania state courts have repeatedly reached the same result. *See, e.g., Prudential Property and Casualty Ins. Co. v. Colbert*, 572 Pa. 82, 93-

---

[3] As the *Riley* Court noted, most household exclusion clauses have been deemed valid, *id.* at 809-10, and the validity of such exclusions is not dependent on any narrow subset of facts where, as here, the policyholder was able to procure a limited risk policy by which the carrier would be forced to cover "items not factored into its risk calculations." *Id.* at 810.

4

94 (2002) (enforcing a household exclusion for underinsured motorist coverage does not violate public policy where it would constitute free coverage that insureds did not pay for); *Paylor*, 536 Pa. at 595-98 (concluding that the existence of more than one policy covering separate vehicles owned by the same insured does not render the household exclusion unenforceable due to public policy because "[t]o allow [the insured] to avoid the exclusionary clauses in the policies would be to allow her to convert inexpensively-purchased under-insured motorist coverage into liability coverage"); *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 278-79 (Pa. Super. 2014) (declining to consider public policy arguments and enforcing a household exclusion where the insured was driving a vehicle which was not insured for that coverage under that policy).

In this case, the same outcome is warranted. The Policy was a limited use classic car policy for the '75 Oldsmobile. Neither Plaintiff nor Mr. Askey paid for underinsured motorist coverage under the Policy for the car Mr. Askey was driving, and the Policy's language plainly excluded such coverage. The plaintiff made successful claims for insurance coverage under three other policies. And the Plaintiff does not cite, nor has the Court found, any case where a court applying Pennsylvania law refused to enforce a household exclusion on similar facts.

Therefore, because neither Mr. Askey nor the Plaintiff "paid to insure [the] vehicle under [the] underinsured motorist policy," *Riley*, 352 F.3d at 811, because the opposite conclusion "would require an insurer to underwrite risks that the insured did not pay to insure," *id.*, and because the Plaintiff has already received other similar coverage for which she had paid, the Court will not (and under controlling law it should not) rewrite the parties' contract on public policy grounds to extend coverage here.

## IV. CONCLUSION

Defendants' Motion to Dismiss, ECF No. 6, will be GRANTED.[4]

*[signature]*

Mark R. Hornak
**United States District Judge**

Dated: November 28, 2016
cc: All counsel of record

---

[4] For the reasons noted, Plaintiff's claim fails as a matter of law. It cannot be resurrected with an amendment, and any amendment would be futile. *See Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). Therefore, dismissal here is with prejudice and without leave to amend.